## Abbott *against* Wyse and others.

Where *A* and *B* entered into a written agreement, by which *A*, in consideration of moneys advanced and to be advanced, by *B*, stipulated to let *B* have his (*A's*) lumber, that he should take to market, the next year, at a fair market price in *H;* but if *B* should not choose to take the lumber, he was to be at liberty to decline it; and in that event, *A* was to refund the money with interest. Previous to the 12th of *July,* in the year referred to, *A* delivered certain parcels of lumber to *B*, which *B* accepted. In an action of *indebitatus assumpsit,* brought immediately thereafter for the value of the lumber so delivered and accepted, it was held, 1. that the agreement created no obligation on *A* to sell, but only gave a preëmptive right to *B* to purchase, and therefore, the case was unlike that class of cases where there are mutual obligatory stipulations, and an entire performance on the part of the plaintiff, constitutes a condition precedent to his right of recovery; 2. that as *A* was under no obligation to bring any more lumber to market than the parcels so delivered, and as these were accepted and retained by *B*, without any offer to return them, *A* was entitled to payment, on the delivery thereof; 3. that a debt being thus created in favour of *A*, the action brought was the proper remedy; 4. that *A* was not precluded from a recovery, by reason of his having sold, during the same season, a small quantity of lumber to some other person, without the consent of *B*.

Where the matter in controversy was the market price of a commodity at *H*, the place of delivery; and in the absence of direct evidence of the price at that place, the party offered evidence of the price at *M*, a few miles distant, in connexion with proof that the market price was ordinarily the same at both places; it was held, that such evidence was admissible.

THIS was an action of *indebitatus assumpsit* for goods sold and delivered, commenced *July* 12th, 1840. The defendants pleaded the general issue, with notice of a set-off. The plaintiff exhibited a bill of particulars, specifying certain parcels of lumber, for which he claimed payment.

The cause was tried at *Haddam, August* term, 1841, before *Church,* J.

The plaintiff, in support of the claim stated in his bill of particulars, read in evidence the following agreement, which was admitted to have been executed by the parties:

" An agreement made by and between *Isaac Abbott,* of *Littleton, N. H.* and *Wyse & Co.,* of *Middletown, Ct., viz.*

" The said *Abbott* agrees to let the said *Wyse & Co.* have his lumber, that he takes to market next year, at a fair market price, in *Hartford, Ct.;* and the said *Wyse & Co.* are to advance to said *Abbott* 100 dollars now, and 900 dollars soon after *J. Wyse* returns home, and 500 dollars in the month of

*Middlesex,*
July, 1842.

Abbott
*v.*
Wyse.

*January* next; the two last-named sums to be sent by mail, unless said *Abbott* otherwise directs : and the said *Abbott* is to allow 6 *per cent.* interest, on all moneys advanced. In case said *Wyse & Co.* do not choose to take the lumber, they are to have that privilege ; and said *Abbott* is to refund the money and interest. Said *Abbott* is to write the said *Wyse & Co.,* and let them know when the lumber starts; and the said *Wyse & Co.* are to write and let the said *Abbott* know, in case they do not want the lumber. It is calculated the said *Abbott* will take to market, in the course of next year, from 500 *m.* to 1000 *m.* feet clapboards; from 200 *m.* feet to 500 *m.* feet boards and plank ; and from 1000 *m.* to 1500 *m.* shingles.

 *Littleton, N. H., Sept.* 27th, 1839.    *Isaac Abbott.*
             *Wyse & Co.*"

 The plaintiff offered evidence to prove the delivery by him, and the reception, by the defendants, at *Hartford* and *Middletown,* of the parcels of lumber specified in his bill of particulars, on or before the 3rd of *June,* 1840. The defendants objected to this evidence as inadmissible, on the ground that the agreement, by the terms of it, obliged the plaintiff to give to the defendants the refusal of all the lumber the plaintiff should bring to market, during the year 1840 ; and that a right of action did not accrue to the plaintiff, on the delivery of each parcel, but only on the fulfilment of the entire agreement on his part, or the expiration of the time therefor ; which had not elapsed at the commencement of this action. The defendants also objected to this evidence, on the ground that, if any action could be sustained by the plaintiff, before the expiration of the season during which he had stipulated to deliver the lumber to the defendants, such action should have been brought on the agreement itself, which remained open and unrescinded. The plaintiff insisted, on the other hand, that as, by the terms of the agreement, the lumber was not to be delivered at one time, but from time to time during the season, the price of each parcel was payable, according to its market value in *Hartford,* on the delivery thereof ; and that an action of *indebitatus assumpsit* could be sustained immediately. The court overruled the objections of the defendants, and admitted the evidence.

 The plaintiff claimed, that the market price in *Hartford,* of the lumber delivered by him to the defendants, at the time of

the delivery thereof, was the price charged in his bill of particulars; which was denied by the defendants. The plaintiff, to establish his claim, offered the testimony of *Philip C. Rand,* a lumber merchant in *Middletown,* that he had offered to the plaintiff, at *Miller's Falls,* while on his way down the river, with his raft, and had afterwards, at the same place, given to one *Bingham,* prices for his lumber, to be delivered at *Middletown,* greater than the prices claimed by the defendants to be the market value thereof in *Hartford,* because he believed the prices so offered by him, were the fair market prices at *Middletown,*—in connexion with evidence, that, at the time of such offer, no lumber had been brought to the market, that season, at *Middletown,* and only one parcel to the market at *Hartford.* The witness also testified, that he knew of no material difference between the ordinary market prices for lumber at *Hartford* and *Middletown,* except at times there might be a difference in the expense of transportation.

The defendants claimed to have proved, by evidence introduced by them for that purpose, that the plaintiff, before and after the delivery of the lumber to the defendants, had sold to *William Isham,* a lumber dealer in *Hartford,* lumber brought to market by the plaintiff, during the season in question, without having offered it to the defendants, as stipulated in the agreement; and on that ground, also, the defendants claimed, that the plaintiff could not sustain his action, while the contract remained open, and not performed by him, at the commencement of the suit. But the defendants did not claim, that they had suffered any damage or inconvenience thereby. The plaintiff denied that he had violated his agreement. He also claimed, that whether he had or not, this action was sustainable, for the lumber actually delivered by him. The court overruled the objection of the defendants, and charged the jury, that the only question for them to decide, was, what was the market price of the lumber delivered by the plaintiff at *Hartford,* at the time of the delivery thereof? And that, for the purpose of enabling them to ascertain that price, they were at liberty to take into consideration, the evidence as to the market price of similar qualities of lumber, at other places in the vicinity of *Hartford,*—as at *Middletown* and elsewhere; and as they should, from the whole evidence, find the market price to be, at the time of the delivery of the

lumber, so they ought to render their verdict. The jury returned a verdict for the plaintiff, with 1200 dollars, 29 cents, damages. The defendants moved for a new trial.

*Baldwin* and *Barnes*, in support of the motion, contended, 1. That on the 12th of *July*, 1840, when this action was commenced, no right of action, in any form, existed in favour of the plaintiff. The contract was entire, and stipulated for no payment before its performance. The plaintiff had the whole season for the delivery of the lumber; and might deliver it as best suited his convenience. In such case, the seller cannot, before the expiration of the time, recover for *part;* because the purchaser may, if he fails to complete his contract, return the part delivered. *Oxendale* v. *Wetherell,* 9 *B. & Cres.* 386. *McMillan* & al. v. *Vanderlip,* 12 *Johns. Rep.* 165. *Ketchum* & al. v. *Evertson,* 13 *Johns. Rep.* 359. *Champlin* v. *Rowley,* 13 *Wend.* 258. *Mead* v. *Degolyer,* 16 *Wend.* 632.

2. That the contract being open and unrescinded, the action (if any could be sustained,) should have been special. *Perkins* v. *Hart,* 11 *Wheat.* 237.

3. That *Rand's* testimony was inadmissible. His offer at *Miller's Falls,* with such means of knowledge only as the witness possessed, did not conduce to prove the fair market value at *Hartford.* It was likely to mislead.

4. That the court erred in not charging the jury, that if the plaintiff violated his contract, in the manner claimed by the defendants, he could not recover.

*Hungerford* and *Wightman,* contra, insisted, 1. That the contract was not entire, in the sense claimed by the defendants. The plaintiff was at liberty to bring as many or as few parcels of lumber to market, as he pleased. Having commenced, he might stop at any point; and then what he had delivered, would be all that the contract required him to deliver.

2. That whether the contract be entire or not, a full performance is not a condition precedent to the plaintiff's right of action. *Studdy* v. *Sanders* & al. 5 *B. & Cres.* 628. *Bragg* & al. v. *Cole,* 6 *J. B. Moore,* 114. *Withers* v. *Reynolds,* 2 *B. & Adol.* 882. *Roberts* v. *Havelock,* 3 *B. & Adol.*

Middlesex,
July, 1842.

Abbott
v.
Wyse.

404.  *Sickels* & al. v. *Pattison,* 14 *Wend.* 257.  *Chitt. Cont.* 446. n.  *Roberts* v. *Beatty,* 2 *Penn.* 63.  *Wilkins* v. *Stevens,* 8 *Verm.* 214.

3. That the action of *indebitatus assumpsit* is sustainable, there being no necessity for the plaintiff to resort to a special action on the contract itself.

4. That if the plaintiff sold lumber to a third person in *Hartford,* without having first offered it to the defendants, this will not defeat the present action.

5. That the testimony of *Rand,* in relation to the market price of lumber at *Hartford,* was properly received ; and the charge of the court to the jury with reference to the evidence on that subject, was conformable to law.  Evidence of the price of lumber at other places in the vicinity of *Hartford,* is proper to show its price at *Hartford.*   *Gregory* v. *McDowel,* 8 *Wend.* 435.

CHURCH, J.  The decision of the principal point in this case, must depend upon a reasonable construction of the contract in question.  As we understand the provisions of this agreement, there was nothing obligatory upon the parties in regard to the sale or purchase of lumber ;—its quality, quantity, nor time of delivery.  The plaintiff, in consideration of moneys loaned, and to be loaned, by the defendants, to him, agreed, that the defendants should have the preferable right or first privilege, if they pleased to avail themselves of it, of purchasing such lumber as the plaintiff might take to the *Hartford* market, the approaching season, at the market price ; and if they should not wish to purchase the lumber, the plaintiff was to repay the moneys loaned, with the interest.  These facts present a case entirely unlike that class of cases relied upon, by the defendants, where mutual obligatory stipulations existed, and an entire performance on the part of the plaintiff constituted a condition precedent to his right of recovery.  Here, there was no obligation to sell, but only a preëmptive right given to the defendants to purchase.  And when, under this right, purchases were made, by the defendants, they were under the same obligation to pay, as if no such preëmptive right existed.  There is no intimation, suggested by this contract, that the plaintiff was to sell on a credit. The plaintiff had received cash advancements, for which he

was to pay interest. Can it be inferred, that he was to pay interest up to the expiration of the next rafting season, when, and when alone, as the defendants claim, the purchase money would fall due? No, certainly. Interest on these advancements could only be claimed up to the time the defendants should receive lumber of sufficient value to cover the loans and the interest. If this be so, it is equivalent to saying, that the defendants were to make payments, by the application of money already advanced, from time to time, as the lumber should be received.

The plaintiff was under no obligation, having delivered one parcel of lumber, of bringing any more to the *Hartford* market. And the facts in the case show, that no more lumber was brought down *Connecticut* river, that season, by the plaintiff, than such as was delivered before the action was brought. Why, then, do the defendants claim a postponement of payment to some future day—to the close of the rafting season? As well might they refer us to any other future period, as being the time of payment.

The case of *Withers* v. *Reynolds*, 2 *B. & Adol.* 882., has a strong analogy to the present. *Reynolds* agreed to supply *Withers* with straw, at the rate of three loads in a fortnight, during a specified time; and *Withers* agreed to pay thirty-two shillings *per* load. It was holden, that this was an agreement, that each load was to be paid for, on delivery. *Sickels* v. *Pattison*, 14 *Wend.* 249.

This is not an entire contract,—a contract for the delivery of a specific quantity of lumber, at a given time, for a certain price. But if it had been such; a substantial part having been delivered and accepted, and no return, or offer to return the amount received; this would have been a severance of the contract, by the defendants, and they would be liable to pay for so much as they had received and retained, with liberty to sue for a breach of contract for the non-delivery of the whole; or to be allowed, in the assessment of damages, in a suit against them for the price, an equitable sum for such non-performance by the plaintiff. *Shipton* v. *Casson*, 5 *B. & Cres.* 378. *Bragg* v. *Cole*, 6 *J. B. Moore*, 114. *Sinclair* v. *Bowles*, 9 *B. & Cres.* 92. *Oxendale* v. *Wetherell*, 9 *B. & Cres.* 386.

If, then, a debt was created, by the acceptance of so much

Abbott
*v.*
Wyse.

of the lumber as the plaintiff actually delivered to the defendants, then a general action of *indebitatus assumpsit* lies to recover such debt.

But, as it is conceded, that the plaintiff agreed to give a preëmptive right to the defendants; it is claimed, that the plaintiff, having sold a small quantity of the lumber to some other person, without the defendants' knowledge, was such a breach of contract on his part, as to prevent his right to recover any thing for the lumber actually received by the defendants. The principles and authorities before stated and referred to, we think, are conclusively opposed to this claim.

It became a question at the trial, what was the market price of lumber at *Hartford*, at the time the plaintiff's lumber was delivered. At that time, there had been no sales at *Hartford*, and no fixed market price was known there. The plaintiff, as conducing to show the value or market price of lumber at *Hartford*, offered evidence of its market price at that time, at *Middletown*, on *Connecticut* river, fifteen miles below *Hartford*. This was objected to, and admitted. Connected with this, there was evidence, that ordinarily the price of lumber at these two cities, was the same. We think this evidence was properly admitted. *Gregory* v. *McDowel*, 8 *Wend.* 435.

No sufficient cause for a new trial has been shewn.

In this opinion the other Judges concurred.

New trial not to be granted.